North Broad Safe Deposit and Storage Co. *v.* The Chester, Darby and Philadelphia Railway Co. et al., Appellants.

*Street railways—Negligence—" Stop, look and listen"—Question for jury.*

In an action for damages resulting from an accident at a railway crossing, the case is for the jury where the evidence submitted by the parties is contradictory in most important particulars.

Plaintiff's evidence tended to show that he stopped, looked and listened and could see no car approaching, and that his horses were struck by a car approaching over an undulating track at the rate of thirty-five miles an hour.   Defendant's testimony tended to show that the wagon was visible for a long distance from the car, and was going in the same direction and turned suddenly to cross the tracks without any effective attempt to " stop, look and listen," which must have disclosed the approaching car clearly visible from the crossing; that the motorman had the current off and brake on and had sounded his bell.   *Held*, that for the court to determine which of these statements is true, would be an usurpation of the power lodged in the jury.

Argued November 16, 1897.   Appeal, No. 33, Oct. T., 1897, by defendants, from judgment of C. P. Delaware Co., June T., 1896, No. 30, on verdict for plaintiff.   Before Rice, P. J., Wickham, Beaver, Orlady, Smith and Porter, JJ.   Affirmed.

Trespass for damages resulting from a collision.   Before Clayton, P. J.

It appears from the evidence that defendants own and operate an electric trolley railway on the Darby and Chester Turnpike Road running in an eastwardly and westwardly direction. The road is about fifty feet in width.   The telford construction occupies about eighteen feet in the middle of the road.   The defendants' railway is constructed on the north side of the road between the telford construction and the north limit line of the road.   The place where the accident occurred is in the borough of Glenolden where Ashland avenue crosses the turnpike road at right angles.

On the morning of July 4, 1895, a wagon with four horses belonging to the plaintiff and in charge of their driver, was proceeding westwardly on the turnpike road, approaching the Ash-

land avenue crossing conveying a party of about twenty young people on a picnic excursion. The driver knowing that the place of destination was somewhere on Ashland avenue, either stopped or slowed up a short distance before reaching Ashland avenue and inquired whether he should turn to the right or the left. The conductor of the party directed him to turn to the right. According to his statement, in order to make a long turn, he started pulling the horses first to the left to get the wagon on the left hand side of the road, and then turned to the right to go along Ashland avenue. When the lead horses had gotten upon the track and the pole horses had their front feet about on the south rail, the defendant's trolley car came along going westwardly and struck the lead horses, injuring them. The evidence was conflicting.

Plaintiff introduced evidence tending to show that the driver before attempting to make the turn, stopped, looked up and down the track, listened for approaching cars and saw none; that the car was running at a dangerous and unusual rate of speed, some of the witnesses testifying that it was running from forty to sixty miles an hour; that immediately after the accident the motorman admitted that he had not rung the bell and that his car was not under control.

Defendants introduced testimony tending to show that the car had only left a switch at a distance of thirteen hundred feet from the place of the accident and that it was a physical impossibility for the car to attain a speed of more than twelve miles an hour in that distance from the starting point; that the wagon was visible from the track for some distance; that the motorman had his brakes on and had been sounding his gong; that the wagon made the turn into the track without stopping.

The court left the question of defendants' negligence and plaintiff's contributory negligence to the jury, with proper instructions as to the law and with fair and impartial comments on the evidence.

Verdict and judgment for plaintiff for $800. Defendants appealed.

*Error assigned* was refusal to affirm plaintiff's first point as follows: " Under all the evidence in the case the verdict of the jury should be in favor of the defendants."

*W. B. Broomall*, for appellants.—It is the legal duty of the person about to cross the tracks of a street railway, when he reaches it, to look in both directions for an approaching car. This duty is as peremptory as the rule with reference to steam railroads to "stop, look and listen." His neglect to look at that point and listen is negligence per se: Ehrisman v. Railway Co., 150 Pa. 180; Myers v. R. R., 150 Pa. 386; Omslaer v. Traction Co., 168 Pa. 519; Davidson v. Railroad Co., 171 Pa. 522; Seamans v. Railroad Co., 174 Pa. 421; Sullivan v. Railroad Co., 175 Pa. 361; Hartman v. Railroad Co., 182 Pa. 172.

The foregoing is a fair epitome of the plaintiff's evidence relating to the accident. A fair construction of it is that if the wagon was stopped at all it was at such a distance short of Ashland avenue, that if the driver looked in the direction of the approaching car the car at that time was not in sight. Then having made a long turn first to the left and then to the right this involved such a length of time as that it was his duty to look again before crossing. If he had done so the plaintiff's case shows plainly that the car was then in sight. Under these circumstances we maintain that the plaintiff is convicted by its own showing of contributory negligence.

The road being level for a distance of four hundred feet before reaching Ashland avenue it is obvious that the description of the accident given by the defendant's witnesses is the correct one, to wit: that the driver of the wagon when he came to Ashland avenue suddenly pulled his horses in front of the approaching car, and that no prior indication was given of his intention to turn into Ashland avenue.

Our cases uniformly hold that it is idle for a man to say that he did not see an approaching train, when if he had looked it would be impossible for him to avoid seeing it.

*Joseph W. Kenworthy*, with him *Joseph H. Hinkson*, for appellee.

OPINION BY PORTER, J., December 13, 1897:

The only error complained of in this case is the refusal of the court below to affirm the defendants' point that "under all the evidence in the case the verdict of the jury should be in favor of the defendants." We have given the testimony in the case

the examination which this assignment requires, and find that the court below committed no error in refusing the request of the defendants.

On the morning of July 4, 1895, a wagon with four horses, belonging to the plaintiff, and in charge of a careful driver, was proceeding westwardly on the Darby & Chester Turnpike through the borough of Glenolden, in Delaware county. In the wagon were a party of about twenty young people, on a picnic excursion. Their destination was a grove north of the turnpike on Ashland avenue in the said borough. The driver, knowing that the place of destination was somewhere on Ashland avenue, stopped before reaching the avenue and inquired of the conductor of the party whether he should turn to the right or to the left. He was directed to turn to the right, which required him to cross the tracks of the defendant company. According to the testimony for the plaintiff, in order to make a wide turn, he pulled his horses first to the left and then to the right across the tracks, to proceed along Ashland avenue. When the lead horses had gotten upon the track and the pole horses had their front feet about on the south rail, the defendants' trolley-car struck the lead horses, doing them serious injury. For these injuries and some damage to the harness and wagon, the suit was brought.

It was testified by the plaintiff's witnesses, including the driver and a number of the occupants of the wagon, that before attempting to cross the tracks of the defendants, the wagon was stopped, and that the driver looked to the right and to the left more than once, and listened for the approach of a car; that several of the occupants of the wagon also looked and listened, and that none of them saw or heard a car approaching. The stop was made within a short distance of the place of crossing, where the occupants of the wagon had an unobstructed view. The roadway upon which the car approached was an undulating descending grade. The car was proven to be invisible at something over 1,300 feet, some of the plaintiff's witnesses saying at about 650 feet. The course of the wagon had been in the same direction as that of the car until the attempt to turn into Ashland avenue was made.

It was testified by a number of witnesses for the plaintiff that the car approached at a rate of from thirty-five to forty-five

miles an hour on the down grade ; that no bell was rung and that the motorman admitted at the time of the accident that he had not rung the bell and that he had lost control of the car.

On behalf of the defendants it was testified that the wagon was in sight of the occupants of the car an appreciable time before the attempt to cross the tracks was made ; that the motorman had the current off and the brake on, and had sounded his bell as a warning. The motorman denied the alleged admissions that he had failed to ring his bell and had lost control of the car.

No attempt is made by the defendants to argue in this court that negligence on their part was not sufficiently proven to support the verdict. Their argument is directed to a contention that such contributory negligence was shown on the part of the plaintiff that there should have been no recovery. To this we cannot assent. It was, in our opinion, a case that must inevitably have gone to a jury on the evidence submitted. Under the testimony on behalf of the plaintiff, the rule to look and listen and if necessary stop at a point from which proper observation might be had, was complied with. Apart from this rule the degree of care to be exercised must vary in every case with the circumstances, and no unbending rule in this regard can be laid down. It was for the jury to say not only whether the facts were as alleged by the plaintiff's witnesses, but also whether under the circumstances the plaintiff's driver failed to exercise the care that would be expected of an ordinarily prudent man : Davidson v. Traction Co., 4 Pa. Superior Ct. 86.

The language of Mr. Justice MITCHELL in Ely v. Railway, 158 Pa. 236, may be adopted as applicable to the present case :

" The evidence in the present case shows that the plaintiff stopped, looked and listened before driving on the track. He was, therefore, not proceeding recklessly but with some degree of attention to the situation and his duty in regard to it. The mere act of stopping does not, it is true, of itself show that he stopped at a proper place, or that there was not another and better place where he should have stopped again, or that his duty of looking and listening was performed with the proper care and attention ; but stopping is opposed to the idea of negligence, and unless notwithstanding the stop, the whole evidence shows negligence so clearly that no other inference can

properly be drawn from it, the court cannot draw that inference as a conclusion of law, but must send the case to the jury. . . . But in cases like the present, the plaintiff is not required to disprove contributory negligence, but only to make out a case clear of it. Unless, therefore, his negligence appears affirmatively, he is entitled to go to the jury on the general presumption against it, and so, likewise, where the evidence is conflicting as it was here." It is true that the case from which the quotation is taken was a grade crossing of a steam road, but the propositions stated have clear and direct application to the case in hand.

The evidence submitted by the parties is contradictory in most important particulars. The plaintiff's witnesses say that they looked and could not see the car approaching. The defendant's witnesses upon the car say that they saw the wagon as they were approaching, for some distance. For the court to determine which of these statements is true, would be an usurpation of the power lodged in the jury. We have no doubt that the refusal of the point was a correct ruling and therefore, the judgment of the court below is affirmed.