# Jones Bros. *v.* Greensburg, Jeannette and Pittsburg Street Railway Company, Appellant.

*Street railways—Contributory negligence—Stop, look and listen—Question for jury.*

The rule of " stop, look and listen," applicable to the crossing of steam roads applies only in part to the crossing of street railways. There is always the duty to look for an approaching car, and if the street is obstructed to listen, and in some situations to stop, and the plaintiff will be held to have seen what is obvious; but whether or not a driver in a given case ought, under all the circumstances, to have come to a full stop, and whether or not he would have seen or heard the car if he had looked and listened, and whether or not he testified truthfully as to what he did in that regard, are questions for the jury.

*Street railways—Common use of tracks—Degree of care.*

So long as the right of common user of tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence on their own part, may not be able to get out of the way of a passing car.

*Negligence—Burden of proof—Inference warranted by circumstances.*

The burden of proving negligence rests upon the plaintiff, but negligence may be inferred by a jury where all the circumstances are such as to repel any other conclusion.

*Question for jury on inference of negligence.*

The case is for the jury on the question of negligence of a railway company, where there is evidence from which a jury might infer that there was an absence of that watchful care which ought to have been exercised under all the circumstances.

Argued April 18, 1898.    Appeal, No. 102, April Term, 1898, by defendant, from judgment of C. P. Westmoreland Co., Feb. T., 1897, No. 150, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass. Before McILVAINE, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $170.    Defendant appealed.

*Errors assigned* were in refusing to affirm first, second, third and sixth points of defendant, which points and answers are as

follows: "1. The plaintiff was bound to the exercise of more than ordinary care and caution since he voluntarily placed himself in a dangerous position when he drove his team upon the bridge. His failure to remain off the bridge to avoid the accident was negligence and the verdict should be for the defendant. *Answer:* This proposition is refused for the reasons stated in our general charge; it involves some conflict of testimony which is for the jury and not for the court. 2. It is the duty of drivers of private vehicles to give unobstructed passage to electric cars, and the plaintiff being unnecessarily upon the track, took the risk of a collision and was guilty of contributory negligence. *Answer:* We give substantially the same answer to this proposition as to the first. We cannot say as a matter of law that there was any contributory negligence and have already submitted to you that question under the evidence. 3. If the jury believe the motorman did all in his power to avert the accident there can be no recovery, and the verdict should be for the defendant. *Answer:* We cannot affirm this proposition unqualifiedly; if you find there was no negligence, as we have defined that term, upon the part of the defendant company, or upon the part of the motorman who had charge of the car, then undoubtedly there can be no recovery and your verdict ought to be for the defendant. 6. Under all the evidence plaintiff is not entitled to recover and the verdict, therefore, should be for the defendant. *Answer:* This proposition is refused, as we think it involves questions for you."

*Curtis H. Gregg*, with him *Sidney J. Potts*, for appellant.— The appellant assigns two reasons, which give cause for the reversal of the court below, as follows: 1. That there was not sufficient proof of the negligence of the defendant company. 2. That there was clear, indisputable evidence of the negligence of the plaintiffs or their driver which amounted to contributory negligence, and consequently the right of plaintiffs to recover failed.

Negligence is the absence of care according to the circumstances: Pennsylvania Railroad Co. v. Fries, 5 W. N. C. 545.

The rule is well settled that a party is not answerable in damages for the reasonable exercise of a right unless upon proof of negligence, unskilfulness or malice: Philadelphia & Reading R. R. Co. v. Yeager, 73 Pa. 121.

*A. W. Griffith*, for appellee, submitted no paper-book.

OPINION BY RICE, P. J., December 16, 1898 :

Second street in the borough of Jeannette crosses the Pennsylvania railroad at right angles by a bridge, in the center of which is the track of the defendant company. For a distance of three hundred feet or more south of the south end of the bridge the street is practically level. The bridge is one hundred eighteen and one half feet in length and is level. After leaving the north end of the bridge the railway extends in the same direction for forty or fifty feet, when it curves and proceeds on a steep grade up Gaskill avenue to First street, where it again curves and extends along the last mentioned street. From a point fifteen feet south of the south end of the bridge a car approaching from the other direction can first be seen at a distance of seven hundred and thirteen feet. Rounding the curve from First street to Gaskill avenue coming down the hill it would then disappear from view for a short distance, and then it could be seen for about thirty feet, when again it would be hid from view for about the same distance. It would then appear in view at McCune's house, a point about three hundred and eighty three feet distant from the first mentioned point, and thereafter would constantly remain in sight of any one approaching the bridge from the south.

The plaintiff's driver was in the act of crossing this bridge from the south and when about half way across, a car of the defendant approaching from the north collided with his team. He and his companion jumped from the wagon across a railing into the footpath and escaped injury. The bridge was not wide enough for a car and a wagon to pass; nor, when the driver says he first saw the approaching car, was there time enough to reach the opposite end of the bridge or to back off before the collision.

1. The contention is that he was guilty of contributory negligence in driving on the bridge, and that the court ought so to have instructed the jury, as a matter of law. Considering the case in the light of the other undisputed facts to which we have alluded, the correctness of this position might be conceded, if he drove on the bridge without looking or listening, and, if he had looked, would have seen the car at McCune's

house, approaching at a very high speed, or would have heard the gong if he had listened. While street railways have not an exclusive right to the use of their tracks, their rights are superior to those of the traveling public; their cars have the right of way thereon over private vehicles and pedestrians, and the latter must yield to this superior right: Smith v. Phila. Traction Co., 3 Pa. Superior Ct. 129 ; Davidson v. Traction Co., 4 Pa. Superior Ct. 86, and cases there cited. Applying this well settled principle to the case supposed in the above proposition it might well be said, that the driver had no right to take the chance of being able to cross the bridge before the car would reach the north end. It was a dangerous place and the driver knew it to be so, and as Mr. Justice FELL tersely says in Callahan v. Traction Co., 184 Pa. 425 : "No error in the close calculation of a chance can relieve from the charge of contributory negligence." But the driver swears that immediately before driving on the bridge he brought his team nearly to a stop and looked, but did not see nor hear the car; that when he first saw it, it was at McCune's house, and that he had then driven from one fourth to one half the distance across the bridge. He thus describes the situation: "Well, as I was crossing (I was nearly half way over, I guess) I seen a car coming down at a terrible speed, and seeing no chance of getting on or off I hastened to do the best I could to make an escape and just as I was about doing so, the car run into me." He swears that the car seemed to be coming at the rate of forty miles an hour. Other witnesses estimated the speed at twenty or twenty-five miles an hour. At all events, it was going at a very high speed on a steep down grade and would have traversed the distance between McCune's house and the point of collision in a very few seconds. It would have been a manifest usurpation of the functions of the jury, if the court, in the face of this testimony, had held, that the driver would have seen the approaching car if he had looked before driving on the bridge, and, therefore, he was guilty of contributory negligence. "The rule, to 'stop, look and listen,' applicable to the crossing of steam roads, applies only in part to the crossing of street railways. There is always the duty to look for an approaching car, and if the street is obstructed to listen, and in some situations to stop : Omslaer v. Traction Co., 168 Pa. 519. And the plaintiff must be held

to have seen that which was obvious:" Callahan v. Traction Co., 184 Pa. 425; Safe Deposit Co. v. Railway Co., 6 Pa. Superior Ct. 204. The same rule is applicable to a case like the present. But whether or not the driver ought, under all the circumstances, to have come to a full stop, and whether or not he would have seen or heard the car if he had looked and listened, and whether or not he testified truthfully as to what he did in that regard were questions for the jury. This was not a case, where, in the face of his testimony and of the undisputed testimony as to the speed of the car, the driver must be conclusively presumed to have disregarded the rule of law and of common prudence, and negligently to have gone into an obvious danger.

2. It is argued, that the allegations of negligence contained in the plaintiff's statement were not sustained by any competent evidence. These allegations were (1) that the defendant by its servants so negligently and carelessly operated and ran its car as to lose control of the same; (2) that the defendant negligently failed to provide its cars with proper brakes and other appliances necessary and usual for the controlling and stopping of its cars; (3) 'that the defendant negligently failed to provide experienced and competent employees to operate its cars. If we are to accept the defendant's theory as correct, the accident was not due to negligence in any of these particulars, but was due solely to the slippery condition of the rails, owing to a recent shower, and was unavoidable. As this condition is a very common one it might well be questioned whether or not, in view of the steepness of the grade, the curves in the track, and the narrowness of the bridge the company would not be held to a duty to provide appliances not ordinarily in use in order to meet the extra hazardous conditions. For if the loss of control of the car was due solely to the slipperiness of the track, it would seem that this would be a very common occurrence, and one always to be expected after a shower of rain. To say the least, this was a very perilous piece of track both to passengers and to persons crossing this narrow bridge in vehicles, if this explanation of the accident be the true one. We think, however, upon a fair view of the evidence, that there is no occasion for the court to lay down a stricter rule of law as to the duty of the defendant, at this par-

ticular place, than the general rule recognized in all the cases, which is thus stated in Ehrisman v. Railway Co., 150 Pa. 180: "So long as the right of a common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care, as will prevent accidents or injuries to persons who, without negligence on their own part, may not at the moment be able to get out of the way of a passing car." We recognize the general principle that as between the street railway company, and a traveler on the highway, negligence of the former is not to be presumed from the fact of an accident merely. The burden of proving negligence, and the negligence alleged in the declaration, rests upon the plaintiff, but this may be inferred by a jury where all the circumstances are such as to repel any other conclusion. As we have already intimated, the circumstances had a tendency to show, that if this car had been provided with the appliances which the conditions called for, and had been properly operated, it ought to have been stopped within the distance between the point at which the motorman first had a sight of the team on the bridge, and the place of collision. This natural inference is strengthened by affirmative evidence that sand sprinkled on the track is commonly used to assist in making the application of the brakes and reversal of the electric current effective; that some of the motormen had notified their superiors, that there was no sand at the car barn, and had been none for two or three days before; that it was needed because as one of them testified "we expected trouble of this kind;" and also, that the track was examined by an experienced railroad man, immediately after the accident, and that he found no sand on the rails. This last witness testified as follows: "Well, I knew that there was no sand on the rail; I am a railroad man; I used to railroad, and that was about the first thing I looked at; but noticed the appliances on the car, when they were coming around the curve, instead of throwing the sand on the rail, they would have throwed it off the rail on the other side of the track." On the other hand the motorman of this car testified that his car was supplied with sand and that he used it. It is not our province to pass upon credibility of this, and other testimony upon the same subject; nor are we to be understood as declaring as a matter of law, that it was the duty of the company in addition to the other appliances to sup-

ply its cars traversing this dangerous piece of track with sand or that it was the duty of the motorman to use it, or if it had been used, he would have been able to keep or regain control of the car and thus avert the collision.    It is sufficient for us to say, that there was evidence from which a jury might infer that there was an absence of that watchful care either on the part of the defendant company, or its employees which ought to have been exercised under all the circumstances.    The question was submitted to the jury, in a clear and impartial charge, and we find no sufficient legal reason for disturbing their verdict.

All the assignments of error are overruled and the judgment is affirmed.