# William W. Trout *v.* The Altoona and Logan Valley Electric Railway Company, a Corporation Organized and Existing under the Laws of Pennsylvania, Appellants.

*Street railways—" Stops, look and listen."*

The rule " stop, look and listen " applicable to the crossing of steam roads applies only in part to the crossing of street railways. There is always the duty to look for an approaching car, and, if the street is obstructed, to listen, and in some situations, to stop.

*Contributory negligence—Obvious danger—Prior knowledge—Street railway crossing.*

A wayfarer in crossing a street railway must be held to have seen that which was obvious, and it is his equal duty to act in the light of his previous experience. To ignore past observations and drive recklessly into an evident danger is as much contributory negligence on his part as to disregard a signal given.

*Province of court—Duty to declare contributory negligence.*

It was the duty of the court to declare contributory negligence and give binding instructions for defendant, when it appears from undisputed testimony that the driver of a buggy did not look until the horse was upon the track of a trolley line; that he did not stop before crossing the track at a crossing with which he was familiar and which was known by him to be dangerous.

VOL. XIII—2

Argued Oct. 23, 1899. Appeal, No. 31, Oct. T., 1899, by defendant, from judgment of C. P. Blair Co., Jan. T., 1898, No. 285, on verdict for plaintiff. Before RICE, P. J., ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by ORLADY, J.

Trespass. Before BELL, P. J.

It appears from the uncontradicted evidence of the case that Samuel D. Hines hired from plaintiff a buggy; that on October 1, 1897, he was driving in the buggy with two ladies westwardly on Sixth avenue in Altoona, towards Thirteenth street.

The tracks of the defendant company cross Sixth avenue at right angles on Thirteenth street. There is a large brick building—a fire company house—on the southeast corner, built up to the line on both street and avenue, which obstructs the view approaching Thirteenth street, going up Sixth avenue, and renders it impossible to see a car or vehicle coming down Thirteenth street from Fifth avenue until the corner of the building is passed.

The railway at this point is on a steep downward grade. The car was descending at its usual speed this grade from Fifth avenue where the railway turns down Thirteenth street. From the moment it turned on to Thirteenth street, a distance of 255 feet, it would be plainly visible to any one on Sixth avenue, after passing the corner of the brick building.

It appears from the testimony of Hines that he had often driven over this crossing and was perfectly familiar with it; that he knew it was dangerous and once or twice had nearly been caught there before. In his testimony he says, " as this place especially is a bad place, you can't scarcely hear the car there unless they had rung the gong, till they are right on you." He further testified that he listened and heard nothing and looked and saw nothing and that the collision occurred immediately after his horse was on the track and that he did not see the car until it was right on him, when he could not stop. That in approaching the track he was going at a " decent trot;" did not slacken his speed as he approached the crossing and attempted to cross at the same gait when the collision occurred. The car struck back of the horse at the singletree, after he had pulled him back. The first intimation that Hines had of danger

was the screaming of the girls.    He said he could have heard the gong if it had been sounded.

The judge in his charge to the jury instructed them that the evidence of the fact of the nonsounding of the gong was insufficient, and that the testimony of five or six witnesses clearly showed that the gong was rung; that upon this point there was not a scintilla of evidence to submit to them.    He submitted the case to the jury on the question of the excessive speed of defendant's car.

Defendant submitted among others the following points:

[2. The failure to stop, look and listen before crossing a street railway track is negligence in law.    As the evidence of the plaintiff's driver shows that he violated this imperative and unbending rule, there can be no recovery, and the verdict must be for the defendant.    *Answer :* This point is denied as put. The legal rule stated in it applies to the crossing of steam railroads ; but, as I have already instructed you, the rule as to the crossing of a street railway is so far relaxed that the rule of law as to stopping is not imperative and unbending.    A man must look and listen, but whether or not he is to stop depends upon all the circumstances surrounding the case.    If it is an especially dangerous crossing, or if for any reason a man of ordinary prudence would stop before attempting to cross, then he who does not stop and is injured is guilty of contributory negligence and cannot recover.]  [9]

[5. It is demonstrated by the testimony that if the plaintiff's driver obeyed the legal injunction he saw the approaching car and heard it, and the only deduction possible is that he did not look and listen, or that, seeing and hearing, he went on regardless of the danger.    Therefore, there can be no recovery, and the verdict must be for the defendant.    *Answer :*  This point is denied as put.    It asks me to say to you as a matter of law that it is demonstrated that there was contributory negligence. I decline to so instruct you.]  [11]

9. Under the uncontradicted evidence of the plaintiff's driver and Miss Brennecke, the plaintiff was guilty of contributory negligence and there can be no recovery, and verdict must be for the defendant company.    *Answer :* This point is reserved, with the right to enter judgment for the defendant non obstante veredicto.

Verdict and judgment for plaintiff for $172.60.   Defendant appealed.

*Errors assigned* among others were (9, 11) refusal of defendant's second and fifth points, reciting same.

*T. H. Greevy*, for appellant.—As to the application of the rule to stop, look and listen at street railways see Calahan v. Traction Co., 184 Pa. 425.   See also Ehrishman v. Railway Co., 150 Pa. 180, Wheelahan v. Traction Co., 150 Pa. 187, and Omslaer v. Traction Co., 168 Pa. 519.

In Myers v. B. & O. R. R., 150 Pa. 387, it was held that one who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop, look and listen, must be conclusively presumed to have disregarded that rule of law and of common prudence, and to have gone negligently into an obvious danger.   See also Hoffmeister v. Railroad Co., 160 Pa. 568, Penna. R. Co. v. Mooney, 126 Pa. 244, Funk v. Traction Co., 175 Pa. 559, Nugent v. Traction Co., 181 Pa. 160, Carson v. Railway Co., 147 Pa. 219, Yingst v. Railway Co., 167 Pa. 438, and Davison v. Traction Co., 10 Superior Ct. 442.

Judge SMITH, in delivering the opinion of the Superior Court, in Davidson v. Traction Co., 10 Pa. Superior Ct. 442, says: "This case recalls the frequent case in which the traveler at a railroad crossing, while no train is within sight or hearing, is struck at the moment of stepping on the track.   Natural law will scarcely tolerate such liberties."

*N. P. Mervine*, for appellee.—The doctrine of "stop, look and listen" constitutes an inflexible and unvarying rule as applied to steam railroads, but is not an unbending rule in all of its requirements as applied to electric street railways.

The opinion of the Supreme Court in the case of Gibbons v. Railway, 155 Pa. 279, may well be applied to the present case.

In the case of Gaughan v. Traction Co., 189 Pa. 408, the case was submitted to the jury on both questions of negligence in the defendant company, and contributory negligence in the plaintiff.

To the same effect are the cases of Haney v. Traction Co.,

159 Pa. 395, Jackson v. Traction Co., 159 Pa. 399, and Jones Bros. v. Railway Co., 9 Pa. Superior Ct. 65.

In the case of Allen v. Warwick Township, 9 Pa. Superior Ct. 507, on the question of contributory negligence, it is held as follows: "The sole question presented is whether, upon his uncontradicted statement, the plaintiff was guilty of contributory negligence. Where the facts are uncontested, or the inference of negligence the only one that can be drawn, the court must pronounce the result as a matter of law, but where the facts are in dispute or the inference from them open to debate, they must go to a jury (Ely v. Railway, 158 Pa. 233), and, whether the plaintiff was or was not guilty of negligence, which contributed to the injury of which he complains, must be inferred from all the facts and circumstances disclosed by the testimony. Such inferences are for the jury and not for the court: Merriman v. Phillipsburg, 158 Pa. 78; Fisher v. Railway, 131 Pa. 292. . . . The plaintiff is not required to disprove contributory negligence, but only to make out a case clear of it. Unless, therefore, his negligence appears affirmatively, he is entitled to go to the jury on the general presumption against it: Ely v. R. R. Co., 158 Pa. 233; Wilson v. Traction Co., 10 Pa. Superior Ct. 325; McGovern v. Traction Co., 192 Pa. 344."

OPINION BY ORLADY, J., February 16, 1900:

The plaintiff, a livery stable keeper, hired to one Samuel D. Hines a horse and buggy which, while being driven by him on the streets of the city of Altoona, were injured in a collision with a car of the defendant company. On the trial of the case in the court below, the defendant's ninth point was as follows: "Under the uncontradicted evidence of the plaintiff's driver and Miss Brennecke, the plaintiff was guilty of contributory negligence and there can be no recovery, and the verdict must be for the defendant company," to which the court answered, "This point is reserved, with the right to enter judgment for the defendant non obstante veredicto."

The defendant's eleventh point, and the court's answer, are as follows: "The uncontradicted evidence of the plaintiff's witness shows that the driver did not look until the horse was upon the track: this was too late; the driver should have looked for an approaching car before he drove upon the track; there-

fore there can be no recovery, and the verdict must be for the defendant. *Answer :* This point is denied as put. It asks me to say to you that you must find for the defendant. This I decline to do; but I do say to you that if the driver did not look until the horse was upon the track, it was too late. The driver should have looked for the approach of the car before he drove upon the track. If he did not, it is an end to the plaintiff's right to recover, and your verdict should be for the defendant."

A verdict was returned in favor of the plaintiff, and, after argument, the reserved question was decided in his favor and a judgment was entered on the verdict. The undisputed testimony of the plaintiff's driver clearly establishes the fact of his contributory negligence. He was driving with the others up Sixth avenue, an asphalt paved street, and at the moment of crossing the defendant's railway track on Thirteenth street a car struck the party. The point of impact as described by him was about the singletree, just back of the horse. The result of the collision was that it cut the horse loose from the buggy, threw the occupants into the street, and dragged the horse along the course of the track a distance varying from twenty-six to seventy feet.

The plaintiff's right to recover is to be measured by the testimony of Hines and Miss Brennecke, who occupied the buggy with him. What he did is clearly stated and is not open to any contradiction or doubtful interpretation, either direct or inferential. He was familiar with the locality and had ten years' experience in driving horses. He admits that the crossing was not only dangerous but was known to be so by him. He testified as follows : " Q. As you approached Thirteenth street, what sort of a gait did you have on your horse? A. Well, I was jogging along at a nice slow jog. The horse was not going fast. Q. As you drove up to Thirteenth street, what did you do in the way of exercising care? A. I was listening and looking. I always do at any corner. Of course I didn't stop the horse because I didn't hear anything to stop the horse for." On cross-examination he describes the speed at which he approached the tracks as "a decent trot, a nice slow trot." "Q. You say you looked and listened. Where did you look? A. Well, I knew the car comes down that way, and I always looked up that way as soon as I got past the corner. Q. If you had stopped at the

corner of Thirteenth street and Sixth avenue, you could have looked up all the way? A. Yes, sir; if I had stopped; but I didn't stop. There is very few drivers does stop. Q. If you had stopped, you could have seen all the way up? A. I guess I could if I had stopped; but there is no drivers ever does stop, or none I ever saw. Q. The first you saw of the car was just when it was about to strike you? A. Yes, sir; or so close that I couldn't stop. Q. Did you see the headlight of the car? A. No, sir; I did not. Q. It was too close? A. It was too close and I was frightened, then; I didn't think about any headlight. Q. When you got frightened, did you hurry the horse up? A. No, sir; I pulled the horse back; if I hadn't done that, it would have struck us just about where we sat in the buggy. Q. You didn't see the car before the girl screamed? A. No, sir. Q. If you had listened attentively you could have heard the gong in the middle of Sixth avenue? A. Not there, you can't. That brick building drowns the sound. Q. When did you first learn that? A. I knew it to be a fact. I didn't stand there. I almost have been caught several times at the same place with a wagon. Q. You knew that you couldn't hear the gong? A. Yes, sir."

Miss Brennecke, who was in the buggy with Himes, testified the same in substance, namely that they had occupied the crossing when the horse was moving on a trot and did not change the gait when approaching the crossing.

According to his own testimony it was the manifest duty of Hines, as he approached the street crossing to slow up. It was a place of known danger, at which he had, on former occasions, received direct knowledge of the risk; and it was as much his duty to keep his horse under control as it was the motorman's duty to keep the car under control: Harwood v. Union Traction Company, 189 Pa. 592.

While street railway companies have not the exclusive use of their tracks at crossings, or on other parts of the street, their rights are superior to those of the public. Their cars have the right of way, and it is the duty of the citizen, whether on foot or in vehicles, to give unobstructed passage to the cars. This results from two reasons: first, the fact that the cars cannot turn out or leave their track; and, second, for the convenience and accommodation of the public. These companies have been

chartered for the reason, in part at least, that they are a public accommodation, therefore the convenience of an individual who seeks to cross the tracks must give way to the convenience of the public. It would be unreasonable that a carload of passengers should be delayed by a passing vehicle unnecessarily obstructing the track. In Smith v. Traction Company, 187 Pa. 110, the question is fully considered and many authorities referred to.

From the testimony of plaintiff's driver it is evident that he did not consider the crossing of the track a point of greater danger than the asphalt paved driveway parallel to it. He did not change the speed of his horse, and he voluntarily placed himself in the position known by him to be specially hazardous without exercising the ordinary precautions demanded by the law. He had but to use his eyes in order to have avoided the accident. There is no danger, as in the case of steam roads, in stopping a horse at the very edge of the track. When, therefore, a citizen attempts to cross such a track it is his duty, when he reaches it, to look in both directions for an approaching car. It very rarely, if ever, happens that the street is so obstructed that the car cannot be seen by the citizen as he approaches the street. It is his duty to look toward that point and, if there is any obstruction, to listen; and his neglect to do so is negligence per se. This is an unchangeable rule and must be observed at all times, and under all circumstances. If the citizen looks just before he crosses, he avoids all danger of accident: Ehrisman v. Railway Company, 150 Pa. 180.

The plaintiff's driver was bound to observe special precautions at the particular point where this accident happened, since he had knowledge of the speed of the cars at this particular place and the difficulty of hearing their approach.

No error in the close calculation of a chance can relieve from the charge of contributory negligence: Callahan v. Traction Co., 184 Pa. 425. The rule to stop, look and listen applicable to the crossing of steam roads applies only in part to the crossing of street railways. There is always the duty to look for an approaching car, and if the street is obstructed, to listen and, in some situations, to stop: Omslaer v. Traction Co., 168 Pa. 519. It has been decided in many cases that the plaintiff or his driver must be held to have seen that which was obvious, and it is his

equal duty to act in the light of his previous experiences at the same place. To ignore his past observations and drive recklessly into an evident danger is as much contributory negligence on his part as to disregard a signal given him as a warning : Safe Deposit Co. v. Railway Co., 6 Pa. Superior Ct. 204 ; Jones Bros. v. Railway Co., 9 Pa. Superior Ct. 65. In this review of the case it was error in the court to qualify the defendant's eleventh point, and after the question was entirely within its control under the point reserved, it was error to enter judgment in favor of the plaintiff.

The judgment is reversed and judgment is now entered in favor of the defendant.