## Cupps *v.* Traction Company.

*Street railway—Contributory negligence—Province of court and jury.*

The case discloses contributory negligence where the situation presented is that of a man who looked and listened before he started his team, but who, in the middle of the block, not at a street crossing, drove diagonally across the tracks of the trolley company, in front of a moving car (which before starting he observed to be approaching at a distance of 321 feet) and who after starting his team, did not look again until the car was practically upon him.     Under such circumstances there was no right of recovery.

Argued April 26, 1900.     Appeal, No. 118, April T., 1900, by defendant, in a suit of J. W. Cupps against the Consolidated Traction Company, from judgment of C. P. No. 3, Allegheny Co., May T., 1899, No. 613, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.     Reversed.     Opinion by W. W. PORTER, J. ORLADY, J., dissents.

Trespass for personal injury.     Before EVANS, J.

It appears from the evidence that the Consolidated Traction Company operates a double track street car line the entire distance of Fifth avenue in the city of Pittsburg. In the portion of the city generally known as East End, about midway between Moorewood avenue and Bidwell street which both cross Fifth avenue at right angles, and fronting upon Fifth avenue, is the residence of Mr. Reuben Miller. There is a driveway from Mr. Miller's place out to, and connecting with, Fifth avenue. Mr. Miller's residence is on the right-hand side of Fifth avenue, as you go towards Wilkinsburg, and, therefore, the east bound track, or the track upon which the cars run to Wilkinsburg, is nearest to his residence, and the west bound track, or the track upon which the cars run to the city is farthest away from his residence.

On the day of the accident, Mr. Cupps, the plaintiff in this case, drove a two-horse team and a wagon loaded with old lumber and other refuse material which he was taking away from Mr. Miller's place down the drive and out on to Fifth avenue. He stopped in the gutter of Fifth avenue to unloosen the brake which he had set for the purpose of coming down the hill out of Mr. Miller's grounds. The testimony shows that while at this point, a car going towards Wilkinsburg passed him, on the track nearest to him. He was at that time about twenty feet from the rail of the track upon which the collision occurred, and his purpose was to drive towards Pittsburg in the same direction that the car was traveling, which finally struck his wagon.

While at that point he looked in both directions and had an unobstructed view for several squares of the track. He testifies that he saw the car with which he came into collision, and it was then at Moorewood avenue, which was some 300 feet away, and he supposed that he would have time to cross in front of it, and so climbed on to his wagon, but without looking again at the car, he pulled over the intervening track diagonally away from the car which was approaching him, and which was all the time within view, and then crossed the intervening space between the tracks and on to the farther track and got his horses over it, when the car struck the hub of the front wheel of his wagon. At the time of the accident the car was running between crossings on a down grade with the power thrown off.

Plaintiff's testimony tended to show that the car was running at an excessive and unusual rate of speed.

The motorman explains that when he first saw the wagon it was standing still, and when it started, the horses' heads were turned to go on the opposite track which was at that time clear and would have been perfectly safe, and only when he was within such a short distance as to make it impossible to stop, did the plaintiff turn his horses across the track upon which the car was approaching. He testified that he did all he could do to stop the car but failed.

Upon the trial the court overruled a motion for a compulsory nonsuit and also for binding instructions.

Verdict and judgment for plaintiff for $1,250. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*H. L. Castle*, with him *Geo. C. Wilson* and *W. P. Potter*, for appellant.—There is nothing peculiar in this case beyond the fact that the accident for which the suit was brought was caused, as we view the evidence, by reason of the plaintiff driving directly across a wide public highway, in broad daylight and upon the track, in front of an approaching car, when it was so near that the motorman was unable to stop. It seems to us that there was no excuse for the plaintiff getting in the way of the car at the time and under the circumstances in which the accident happened: Wheelahan v. Traction Co., 150 Pa. 187; Smith v. Traction Co., 187 Pa. 110; Darwood v. Traction Co., 189 Pa. 592; Jones Bros. v. Railway Co., 9 Pa. Superior Ct. 65.

It was a dangerous place, and the driver well knew it to be so: Callahan v. Traction Co., 184 Pa. 425.

*Rody P. Marshall*, with him *Thos. M. Marshall*, for appellee.—In many cases it has been declared by this and the Supreme Court that so long as a use in common of the streets exists, it is the duty of street railway companies to exercise such watchful care as will prevent accident, and the degree of care must vary with the circumstances of the case, and when the testimony is conflicting, and there is doubt as to the facts

and deductions to be drawn therefrom, the case is for the jury: Smith v. Phila. Traction Co., 3 Pa. Superior Ct. 129; Davidson v. Traction Co., 4 Pa. Superior Ct. 86; Gibbons v. Railway, 155 Pa. 279; Kestner v. Traction Co., 158 Pa. 422; Lott v. Railroad, 159 Pa. 471; Thatcher v. Traction Co., 166 Pa. 66.

The cases cited by the appellant are different from the one now being considered.

In Ehrisman v. East Harrisburg St. P. R. Co., 150 Pa. 180, the plaintiff had driven sixty feet after having stopped, looked and listened, but in the opinion in that case Chief Justice PAXSON said : " On the other hand, it is the duty of the companies to see that their motorman shall be on the alert, not only at street crossings, but everywhere, upon the tracks to see that citizens are not run down and injured."

If the court would have held as matter of law, that plaintiff was guilty of contributory negligence in starting to cross the tracks when the car was 375 feet distant, then on many of the streets of Pittsburg a man would never cross a street car track without being guilty of negligence.

OPINION BY WILLIAM W. PORTER, J., May 24, 1900 :

The only specification of error is the refusal of the court below to direct a verdict for the defendant as requested by the point of charge. There is little discussion in the arguments directed to the allegation of negligence on the part of the defendant. The appellant urges that the negligence of the plaintiff contributed to the accident which caused his injury, and claims that there should be a reversal of the judgment.

The plaintiff, with his wagon loaded with lumber, drove out of the private grounds of Mr. Miller. The driveway was a declivity. The plaintiff locked the rear wheels until the wagon reached the gutter of Fifth avenue. He then descended, partially loosened his brake and climbed up on the load upon his wagon. He looked up the street and down for the cars. He says : " There was one car leaving Bidwell street, going east, the other was coming from Moorewood avenue. I started across the street. I was not dreaming of danger. I thought I had plenty of room and time to make it. The horses was walking at a reasonable step. As the horses got off the west going track, I thought I heard a car. I was sitting on the front of

the wagon with my feet hanging over the lower front wheel. As I turned around I heard no bell. Thought I heard the car. I looked around and I had no sooner looked than it struck." He further testifies that the distance from the point where he loosened the brake of his wagon to Moorewood avenue, where he saw the approaching car, was 321 feet, and that there was a clear straight track between him and the car. He saw the car coming at Moorewood avenue, and after that he started his team. He was asked: "Then you did not look at the car again until you were struck? A. Until just I thought I heard it." And again, after saying that he looked when he started to go over, he was asked: "But you drove across the space between the curb and the first track and across the space between the two tracks and then on to the second track, and you didn't look for the car at all as you went on the second track?" To which he replied: "I didn't suppose that I needed to keep looking."

The case thus presented is that of a man who looked and listened before he started his team; who in the middle of a square, not at a street crossing, drove diagonally across the tracks of the trolley company in front of a moving car (which before starting he observed to be 321 feet away) and who, after starting his team, did not again look until the car was practically upon him.

The plaintiff seems to have observed the rule to look, listen and, if necessary, stop, before attempting to make the crossing, but where such an attempt is made, one look may or may not be sufficient. It is the look which is made just before he attempts to cross which protects one from the imputation of contributory negligence: Ehrisman v. R. R. Co., 150 Pa. 180. It is true that street railways have not the exclusive right of way of their tracks. Their rights are superior, however, to those of the traveling public. It is the duty of those using the highways, whether on foot or in vehicles, to yield the right of way to the cars: Jones v. R. R. Co., 9 Pa. Superior Ct. 65; Smith v. Traction Co., 187 Pa. 110.

The plaintiff had no right to assume that the duty of avoiding the collision rested upon those in control of the car. He evidently made a miscalculation of his chance in attempting to cross in front of the approaching car, but such a miscalculation

does not relieve from the charge of contributory negligence, even at a street crossing: Callahan v. Traction Co., 184 Pa. 425.

We are of opinion that from all the testimony in the case, and particularly from the testimony of the plaintiff himself, there was no right of recovery, because of contributory negligence. Wherefore, the judgment is reversed.

ORLADY, J., dissenting:

The most severe construction to be placed on the plaintiff's testimony indicates that he attempted to cross over two parallel trolley tracks, located close together, on a wide avenue, at a time when a car was approaching 200 feet distant from the west and another over 300 feet away, from the east. There was a driveway on the outside of the trolley tracks thirteen and one half feet wide. The plaintiff was driving two horses, and hauling an unwieldy load of lumber piled six feet high above the bolsters of the wagon. When he entered upon the avenue from a private residence in the middle of the square, he stopped his team at right angles to the tracks when the front wheels of the wagon were in the gutter at the curb, so. that the horses' heads were but a short distance from the near trolley track. He wanted to get to the opposite side of the avenue, his proper place in the line of travel, to go west to his destination. Several teams were approaching from the west on the driveway on which his team then stood, and their drivers urged him to get out of their way.

After he loosened the brakes on his wagon, he mounted to the driver's place in front and looked up and down the avenue and saw the cars at the distances mentioned. The place was in a thickly settled part of the city, where the car tracks and driveways at each side were being frequently occupied by cars, wagons and other vehicles. He describes the collision as follows : " I started across the street ; I wasn't dreaming of danger ; I thought I had plenty of room, and time to make it. The horses were walking at a reasonable step. As the horses got off the west going track I thought I heard the car. I couldn't drive my team and keep my eye on the car all the time, not on two of them at least." On cross-examination he said : " Q. But this time you did not look at the car at all as your horses went on the track, did you ? A. I looked at it when I started over."

A disinterested eyewitness to the accident testified: " Q. If the car had been running at its ordinary or usual rate of speed could this man have gotten across safely? A. If the car had been running at the ordinary speed, as cars did thirty minutes after that, the motorman could have stopped. Q. Could he have gotten across the track? A. Yes, sir, he could have got across. Q. In safety? A. Yes, sir. Q. Do you mean he could have gotten across if the motorman had not stopped? A. Yes, sir, he could have gotten across if the motorman hadn't stopped. He could have gotten across. Q. State whether the car was running at its usual speed, or slower or faster. A. Running faster than usual. In thirty minutes after that the car system was entirely different." A passenger on the car fixed the speed of the car at about twenty miles an hour. " We were going at an unusually high speed, I think the power was thrown on." The defendant did not move for a nonsuit, and the evidence adduced on its part materially strengthens the plaintiff's contention that the accident was due to the unusual speed of the car, and that had it approached the place of the accident at reasonable speed, the plaintiff would have had ample time to cross both tracks in safety. The motorman admitted seeing the plaintiff when he started to cross the tracks, when the car was " nearer 500 than 200 feet" away. The view was unobstructed along a straight avenue. The car was running down a grade on four bells, a signal which means that the car will not stop for any more passengers. When near to the wagon the motorman became frightened, put on the car brake, went back into the car, closed the doors and turned his face towards the other end of the car, and did not return to the car brake until after the wagon had been struck and it was being pushed along the track. The car carried between thirty and forty passengers and was not stopped until it ran 150 to 200 feet past the place where the collision occurred and was so damaged that the passengers were transferred to another car and this one sent to the repair shop.

The place where the plaintiff first stopped, looked and listened was admittedly a safe and proper one. He took the shortest and most direct route to reach his objective point, the opposite side of the street. The approaching cars were not so close upon him as to hold him guilty of contributory negligence

as a matter of law, and it is a reasonable inference from his testimony that he again looked at the west bound car before he started over that track. He could not give his undivided attention to this particular car. His team, the bulky load he was hauling and the other car were objects of equal care and duty. If there was anything reasonably to inform him of the unusual speed of the car he would be bound by it, and could not discharge his whole duty by stopping before starting. He was bound to exercise ordinary care while crossing the tracks. His situation was an unusual one. He could not occupy the driveway south of the tracks nor the east bound track by reason of the teams and car coming from that direction. The space between the tracks was not of a width to admit of his using it, and if guilty of contributory negligence at all, it was in leaving the space where his wagon stopped at the curb. Or, taking the east bound track out of the case entirely, the evidence conclusively fixes the horses' heads at not more than ten feet away from the track on which the accident occurred, and as the plaintiff was then circumstanced, that distance from the track he was about to cross was not an improper one. Whether this was the last and best place for him to look was a fact for the jury and not for the court. As in Ely v. Railway Co., 158 Pa. 233, and in Safe Deposit Co. v. Railway Co., 6 Pa. Superior Ct. 204, " The evidence in the present case shows that the plaintiff stopped, looked and listened before driving on the track. He was therefore not proceeding recklessly but with some degree of attention to the situation and his duty in regard to it . . . . but stopping is opposed to the idea of negligence, and unless, notwithstanding the stop, the whole evidence shows negligence so clearly that no other inference properly can be drawn from it, the court cannot draw that inference as a conclusion of law, but must send the case to the jury. The plaintiff is not required to disprove contributory negligence, but only to make out a case clear of it." Even in steam railroad cases while the rule to stop, look, and listen is an invaluable one, yet the question whether the traveler in a given case has stopped at the best place is necessarily a question of fact, not of law, Ellis v. Railroad Co., 138 Pa. 506, and even if it was the best place, considering its disadvantages, was it not negligence in the plaintiff not to stop a second time: Whitman v. P. R. R.

Co., 156 Pa. 175 ; Hughes v. D. & H. Canal Co., 176 Pa. 254. The negligence of the defendant company is clearly proved. The contributory negligence of the plaintiff depends on facts and inferences to be drawn therefrom of doubtful import. A jury only should determine the question as to whether a reasonably prudent driver would attempt to cross under such conditions. His team had fully cleared the further track. The propriety of his conduct largely depended upon his surroundings at the time, the principal items being the character of the load he was hauling, the speed of the cars and their distance from him. The case was submitted to the jury in a carefully guarded charge of which the defendant makes no complaint. The evidence was amply sufficient to sustain a verdict as in the cases of Jackson v. Traction Co., 159 Pa. 399, Wilson v. Traction Co., 10 Pa. Superior Ct. 325, and Raulston v. Traction Co., ante, p. 412. I would affirm the judgment.